UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JIM SCHUG and ANNA SCHUG,
*individually, and as Trustees of the*
SCHUG FAMILY TRUST                                                                                  PLAINTIFFS

v.                                          No. 5:22-cv-05101

MCC GROUP HOLDINGS, INC.;
SCOTT BARROWS, *individually and as*
*Trustee of the* SSB TRUST; and FREDERICK
"HEX" BISBEE, JR., *individually, and as*
*Trustee of the* BISBEE REVOCABLE TRUST                                        DEFENDANTS

**OPINION AND ORDER**

Before the Court is Defendants' motion to dismiss or, in the alternative, to compel arbitration (Doc. 11). Defendants filed a brief in support (Doc. 12), to which Plaintiffs responded (Doc. 15). Defendants request that the Court either dismiss the case or compel arbitration under the terms of the parties' Shareholders Agreement. For the reasons set forth below, the motion to compel arbitration will be GRANTED.

**I.      Background**

In January 2019, Defendant MCC Group Holdings asked Jim Schug to become the company's CEO. (Doc. 8, ¶ 12). At the time he became CEO, Mr. Schug and Defendants Scott Barrows and Frederick Bisbee entered into a Shareholders Agreement ("Agreement") in which each of them or their respective family trusts purchased a one-third share of MCC stock. *Id.* at ¶¶ 15–16. Over a year into Mr. Schug's time as CEO, MCC terminated Mr. Schug's employment. *Id.* at 4. The termination trigged a valuation process that required Defendants to redeem the Schug shares based on a pro-rata amount of MCC's fair market value. *Id.* That valuation and buy-back process led to this action.

1

The parties dispute MCC's proper valuation. The Agreement spells out the valuation process. (Doc. 8-1, § 2.3). In short, three appraisers would value the company: one selected by the Schugs, one by MCC, and one neutral appraiser selected by an arbitrator. *Id.* The Schugs would receive an average of the two closest valuations. *Id.* This amount would be "binding and conclusive on the parties, absent manifest error." *Id.*

The parties concluded this valuation process in May 2022. (Doc. 8, ¶ 51). After receiving the neutral appraiser's report, Defendants objected to it based on alleged manifest error. (Doc. 8-9). In their objection, Defendants invoked the Agreement's mediation and arbitration provisions to resolve the dispute. *Id.* at 2. The mediation and arbitration provisions cover "any controversy, dispute or claim between the parties arising out of, related to or in connection with this Agreement or the performance or breach hereof." (Doc. 8-1, § 8.3). The provisions first call for non-binding mediation and then for arbitration conducted by the American Arbitration Association. *Id.* § 8.3(i)–(ii). However, the arbitration provisions do not prohibit parties from pursuing "injunctive relief, temporary restraining orders or other remedies in equity" stemming from a breach or threatened breach of the Agreement. *Id.* § 8.3(iv). After the Defendants invoked the mediation and arbitration provisions, Plaintiffs filed this action, seeking a declaratory judgment of $9,854,000 and injunctive relief related to the Defendants' alleged breaches of the Agreement.

## II.     Legal Standard

Defendants moved to dismiss this action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative to compel arbitration. "[A] Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is not the appropriate mechanism to use to attempt to compel arbitration." *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018) (citing *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 880–81 (8th Cir. 2017)). In *Seldin*, the Eighth Circuit

reasoned the appropriate mechanism to compel arbitration is to consider a stay or dismissal based on Federal Rules of Civil Procedure 12(b)(6) or 56.  *Id.*  Putting aside their 12(b)(1) motion, Defendants are left with their 12(b)(6) motion and motion to compel arbitration.

This Court will use a summary judgment standard to review Defendants' motion to compel arbitration because Defendants' motion was supported by an exhibit outside the pleadings.  *See Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741–42 (8th Cir. 2014).  Summary judgment is appropriate if "there is no genuine dispute as to material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court views the evidence and resolves all factual disputes in the nonmoving party's favor.  *Neb. Mach. Co.*, 762 F.3d at 742.  A claim's arbitrability turns on "(1) whether the parties entered a valid arbitration agreement, and, (2) if so, whether the parties' particular dispute falls within the scope of the arbitration agreement." *Sommerfeld v. Adesta, LLC*, 2 F.4th 758, 761 (8th Cir. 2021) (quoting *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873 (8th Cir. 2018)).  Arbitration is a matter of contract law.  *Parm*, 898 F.3d at 873.

"Where a valid arbitration agreement exists, [a court] must liberally construe it, resolving any doubts in favor of arbitration . . . unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 873–74 (cleaned up).  This involves evaluating whether the clause is broad or narrow.  *Id.* at 874.  If a clause is broad, a court should order arbitration if "the underlying factual allegations simply touch matters covered by" the clause.  *Id.* (quoting *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015)).  Conversely, with narrow clauses, a court asks "whether the dispute involves an agreement collateral to the agreement containing the arbitration clause." *United Steelworkers of Am., AFL-CIO-CLC v. Duluth Clinic, Ltd.*, 413 F.3d 786, 790 (8th Cir. 2005)

(quotation omitted).

### III.     Analysis

The Court's first inquiry when determining a claim's arbitrability is "whether the parties entered a valid arbitration agreement." *Sommerfield*, 2 F.4th at 761.  State contract law governs whether an arbitration agreement is valid and enforceable. *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731–32 (8th Cir. 2009).  Here, neither party disputes the arbitration agreement's validity.  Defendants moved to compel arbitration, (Doc. 11), and Plaintiffs invoked the arbitration agreement in their response (Doc. 15, p. 5).  Because neither party disputes the agreement's validity, the Court finds the agreement is valid and moves to the second question of arbitrability.

The second inquiry is whether the Plaintiffs' claims for declaratory and injunctive relief fall within the arbitration agreement's scope.  *Sommerfield*, 2 F.4th at 761.  As stated above, the Court will resolve doubts in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Parm*, 898 F.3d at 873–74.  The arbitration clause's breadth dictates which test a court will use to see if the claim falls within the clause's scope. *Id.* at 874.

The arbitration clause in the parties' Agreement is broad.  "Arbitration clauses covering claims 'arising out of' or 'relating to' an agreement are broad." *Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017) (citation omitted).  The Eighth Circuit has reasoned that "arising out of" or "related to" language is some of the broadest parties can use. *Parm*, 898 F.3d at 874 (citation omitted).  And the Eighth Circuit has consistently concluded that such language is broad "so long as there was not limiting language elsewhere in the contract." *Id.*  The clause at issue here covers claims "*arising out of, related to* or in connection with this Agreement . . . ." (Doc. 8-1, § 8.3) (emphasis added).  Based on that language, the parties' arbitration clause is broad.

4

Plaintiffs invoke section 8.3(iv) of the Shareholders Agreement to argue that the parties did not specifically consent to arbitrate all disputes. That section states:

> Notwithstanding the foregoing, the provisions for mediation and arbitration hereunder shall not prohibit any party from pursuing any injunctive relief, temporary restraining orders or other remedies in equity, available to the party for a breach or threatened breach of this Agreement.

(Doc. 8-1, § 8.3(iv)). For the sake of argument, the Court will assume without deciding that this language limits the scope of the arbitration clause. This interpretation would allow the Plaintiffs to ask the Court for injunctive relief or other remedies in equity.

Even with this generous interpretation, however, the Plaintiffs' request fails because they in fact seek legal remedies rather than equitable remedies. When interpreting the scope of arbitration agreements, a court's task is "to look past the labels the parties attach to their claims to the underlying factual allegations and determine whether they fall within the scope of the arbitration clause," beginning with the operative complaint. *Parm*, 898 F.3d at 875 (quotation omitted). Looking to the operative complaint here, Plaintiffs labeled their claims as requests for declaratory and injunctive relief. (Doc. 8, p. 14–20). The Court will address the declaratory judgment and injunctive relief claims separately.

First, the Plaintiffs ask the Court to declare, among other things, (1) that the Fair Market Value of Schug's ownership interest is $9,854,000, (2) that Defendants must buy back Schug's shares, and (3) that Defendants must pay Schug the Fair Market Value of $9,854,000. (Doc. 8, ¶ 79(B)–(D)). The Court fails to see how this is not a request for legal damages masquerading as an equitable remedy. "[D]eclaratory relief *per se* is neither legal nor equitable." *Northgate Homes, Inc. v. City of Dayton*, 126 F.3d 1095, 1099 (8th Cir. 1997). In *Northgate Homes*, the Eighth Circuit analyzed whether Northgate could receive a jury trial on its declaratory judgment claim. *Id.* at 1098. To determine if the declaratory judgment was legal or equitable, the court looked to

5

what the nature of the action would be without the declaratory judgment procedure. *Id.* There, absent the declaratory judgment, Northgate would have sought injunctive relief to enforce a cease and desist order. *Id.* Here, absent the declaratory judgment procedure, Plaintiffs seek their claimed legal damages from an alleged breach of the Agreement. In short, the Plaintiffs ask the Court to "specifically enforce Section 2.3(b) of the Shareholder Agreement and grant them a declaratory judgment against Defendants in the amount of $9,854,000 . . . ." (Doc. 8, p. 21). Dressing up a legal damages claim as a declaratory judgment does not make it an equitable remedy allowable under Section 8.3(iv) of the Shareholders Agreement.[1]

Second, Plaintiffs' complaint seeks two counts of injunctive relief related to the Defendants' alleged breach of the Shareholders Agreement. Plaintiffs first ask the court to enjoin Defendants "from further breaches the [sic] Shareholders Agreement" because Defendants "fail[ed] to honor the valid and enforceable terms of Section 2.3 of the Shareholders Agreement." (Doc. 8, ¶¶ 83–84). Plaintiffs then claim Defendants committed waste and oppression "by wrongfully causing the Company to breach its Shareholders Agreement with Schug by failing to redeem his ownership interest at the Fair Market Value as dictated by Section 2.3." (Doc. 8, ¶ 93). In both injunctive relief claims, Plaintiffs ask the Court to enjoin the Defendants from breaching Section 2.3. In other words, Plaintiffs' requested injunctive relief, like their declaratory judgment request, is no more than a request for money damages. And money damages are not equitable remedies.[2]

---

[1] *See generally* 1 Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies: Damages, Equity, Restitution* § 1 (3d ed. 2018) ("Declaratory remedies furnish an authoritative and reliable statement of the parties' rights. Other remedies may be added if necessary, but *the declaratory remedy itself makes no award of damages*, restitution, or injunction.") (citation omitted) (emphasis added).

[2] *Compare Injunction*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A court order commanding or preventing an action. To get an injunction, the complainant must show that there

Even under a generous interpretation of section 8.3(iv) of the Shareholders Agreement, the Plaintiffs' argument fails.  The Court finds that neither the Plaintiffs' declaratory judgment claims nor their injunctive relief claims fall under section 8.3(iv).  In so finding, the Court is mindful of two policy considerations about arbitration. First, to avoid ordering arbitration, the Court must be positive there is no interpretation of the arbitration that would cover this dispute.  *Unison Co.*, 789 F.3d at 818.  The Court is not positive there is no interpretation of the arbitration clause that can cover the parties' dispute.  Second, any doubts should be resolved in favor of arbitration.  *Parm*, 898 F.3d at 873–74.  This also supports ordering arbitration.

Since the Court has found section 8.3(iv) does not apply, the remaining inquiry is whether "the underlying factual allegations simply touch matters covered by the arbitration provision." *Unison Co.*, 789 F.3d at 818.  The Court now turns to this question.  The Plaintiffs' factual allegations focus on the parties' dispute over MCC's valuation.  Plaintiffs' complaint explained the entire valuation procedure and how the parties arrived at their different valuations.  Defendants objected to the final valuation on the grounds of alleged manifest error.  (Doc. 8-9).  Plaintiffs, however, argue no manifest error exists in the computation of the final valuation amount. Asserting no manifest error, Plaintiffs ask the Court to grant them a declaratory judgment or injunctive relief in the exact amount of monetary damages they claim as a basis of the Defendants' breach.  The manifest error issue falls squarely within the scope of the parties' broad arbitration clause.  For that reason, the Court will order arbitration under the parties' arbitration agreement.

---

is no plain, adequate, and complete remedy at law and that an irreparable injury will result unless the relief is granted."), *with Adequate Remedy at Law*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A legal remedy (such as an award of damages) that provides sufficient relief to the petitioning party, thus preventing the party from obtaining equitable relief.").

## IV. Final Matters

Two minor issues merit discussion. First, the Court must decide whether to stay the case or dismiss the case. "While the Federal Arbitration Act 'generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it[,] ... district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration.'" *Sommerfeld*, 2 F.4th at 762 (quoting *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769–70 (8th Cir. 2011)). This Court finds that the entire issue of valuation and manifest error will be resolved by arbitration, so it will dismiss the matter without prejudice.

Second, the parties dispute who should conduct the arbitration. Plaintiffs request the Court order arbitration with an arbitrator the parties previously used in the valuation process. (Doc. 8, p. 19). Defendants, by contrast, request arbitration under the parties' Shareholders Agreement, which mandates selection of an arbitrator through the American Arbitration Association. (Doc. 12, p. 6–7). Plaintiffs do not provide any caselaw that supports their position, so the Court will order arbitration under the parties' Agreement. As 45 days have passed since the Defendants' request for nonbinding mediation (Doc. 8-9), the parties are directed to submit the matter to arbitration under section 8.3(ii) of their Shareholders Agreement.

## V. Conclusion

IT IS THEREFORE ORDERED that Defendants' motion (Doc. 11) to dismiss and compel arbitration is GRANTED. The parties are ORDERED to submit this dispute to arbitration consistent with the terms of their arbitration agreement, and Plaintiffs' claims are DISMISSED WITHOUT PREJUDICE. Judgment will be entered accordingly.

IT IS SO ORDERED this 27th day of September, 2022.

/s/P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE